# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

MAYQUIN HERNANDEZ LOPEZ,[1]

    Petitioner,

vs.

NATE HUIZENGA,[2] et al.,

    Respondents.

No. 26-CV-4020-CJW-MAR

**ORDER**

_____

    Petitioner Mayquin Hernandez Lopez's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 8). Petitioner filed an amended reply. (Doc. 13). For the following reasons, the Court **denies** petitioner's petition for writ of habeas corpus.

## I. BACKGROUND

    Petitioner is a citizen of Guatemala. (Doc. 6–1, at 1). Immigration and Customs Enforcement ("ICE") encountered him in Minnesota during Operation Metro Surge and took him into their custody. (*Id.*, at 2; Doc. 11-1, at 2). He was served a Notice to Appear ("NTA") charging him with being inadmissible for being present in the United States without being admitted or paroled and for failing to possess the required valid

---

[1] The Court notes that in the filings before the immigration court and the immigration documents, petitioner's name is written Mayquin Josue Hernandez-Lopez. *See, e.g.*, (Docs. 6-1 & 11-2). The discrepancy makes no difference for the Court's analysis and the Court follows petitioner's lead in spelling his name. *See* (Doc. 1, at 1); *but see* (*Id.*, at 2 (switching to Hernandez-Lopez)).

[2] As of filing, respondent Nate Huizenga has not filed an appearance or response. The Court finds his appearance or response not necessary here and thus proceeds in its analysis without them. *See* (Doc.8, at 1 n.1) ("[A]ll arguments made on behalf of the [respondents] apply with equal force to Sheriff Huizenga, because [petitioner] is being detained at the request of the United States.").

immigration documents.  (Doc. 11-2); *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]"); 8 U.S.C. § 1182(a)(7)(A)(i)(I) ("[A]ny immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality . . . is inadmissible.).  He was also served with a warrant for arrest of alien.  (Doc. 11-3).

On February 26, 2026, an immigration judge denied petitioner's request for a bond hearing, finding that it did not have jurisdiction.  (Doc. 6-2).

On March 4, 2026, petitioner filed the instant petition with the Court, requesting that the Court order respondents "immediately release him from custody" or "provide him with a bond redetermination hearing at which the [g]overnment should bear the burden of proof by clear and convincing evidence that he is a flight risk or danger to the community."  (Doc. 1, at 2, 19).  He also provided the Court with Exhibits 1 and 2. (Docs. 6-1 & 6-2).  On March 26, 2026, respondents filed a response, arguing "[p]etitioner's detention is consistent with both the plain language of 8 U.S.C. § 1225(b)(2) and due process."  (Doc. 8, at 6).  They also provided the Court with a declaration from Ivasn Sabin and Exhibits A and B.  (Docs. 11-1, 11-2, and 11-3).  On March 30, 2026, petitioner filed an amended reply.  (Doc. 13).  Petitioner remains in ICE custody at the Sioux County Jail.[3]

---

[3]    https://siouxcountysheriff.com/wp-content/uploads/sites/3/sheriffdocs/jail%20inmates.pdf; https://locator.ice.gov/odls/#/results.

## II.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008).  Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).  The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## III.    DISCUSSION

Petitioner argues that his continued detention without a bond determination violates the Fourth and Fifth Amendments.  (Doc. 1, at 14–17).[4]  The Court begins with the statutory argument.

### A.    Statutory Argument

Before getting to petitioner's constitutional claims, the Court first addresses petitioner's claim that he is detained under Title 8, United States Code, Section 1226(a), which permits release on bond or a person's own recognizance; therefore, he argues that

---

[4] Petitioner makes a fourth argument that "[t]he IJ's decision violates the Administrative Procedures Act[.]" (Doc. 1, at 17).  Petitioner, however, does not cite to any authority for that proposition nor does he specify how the immigration judge's decision violates the APA, specifically.  Thus, the Court does not address this argument.

his continued detention violates the statute. (Doc. 1, at 10). Petitioner embeds this argument within his due process argument, but the Court addresses it separately here. While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted. *Id.* at *9. Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted. *Id.* at *11–12. The Court is bound by Eighth Circuit precedent. *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are controlling until overruled by the Eighth Circuit en banc, by the Supreme Court, or by Congress." (cleaned up)).

Thus, petitioner is subject to mandatory detention, and his request for habeas corpus relief, to the extent that he makes one, is **denied** on this ground.

### B.     *Due Process Clause Argument*

Next, petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment, and petitioner asserts that "DHS's continued detention of [petitioner] as well as the IJ's refusal to hold a bond redetermination hearing violates his substantive due process rights." (Doc. 1, at 15). Petitioner states the same as to his procedural due process rights. (*Id.*, at 16). Furthermore, petitioner points out that "the Eighth Circuit's decision addressed only the statutory question. The court expressly did not address specific Due Process Clause requirements or constitutional limits on the duration of mandatory detention without a bond hearing." (Doc. 13, at 3). The government responds

that "[p]etitioner's detention during removal proceedings is also consistent with due process." (Doc. 8, at 4). The Court addresses this argument next.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

In addition, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Id.* at 558. This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984). A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

5

At the same time, the Due Process Clause "affords no protection against the deprivation of liberty interests that are not constitutionally cognizable." *Sanchez-Velasco v. Holder*, 593 F.3d 733, 737 (8th Cir. 2010). And "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 79–80. The Supreme Court has found that Section 1225(b)(2) mandates "detention of applicants for admission until certain proceedings have concluded" and that "neither §1225(b)(1) nor 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). The Eighth Circuit has now concluded that petitioner falls definitively under Section 1225(b)(2)(A). Thus, although in a different situation when he filed his petition, petitioner now claims that he should receive more due process than he is entitled under the statute. But, "being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation." *Ibarra Sanchez v. Bondi*, No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026).

Likewise, although petitioner now requests the ability to post bond, he was not ever released on bond as he entered the country without inspection and the immigration court has not ever made a bond determination. Thus, petitioner did not acquire a liberty interest in release on bond and the government has not arbitrarily revoked an interest that it created. *See Betancourth v. Tate*, No. 4:26-cv-01169, 2026 WL 638482, at *4–5 (S.D. Tex. Mar. 6, 2026) (finding that the re-detention of an alien who was released on her own recognizance with conditions without a bond hearing violated procedural due process because of that previous release); *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at *5–6 (S.D. Tex. Feb. 25, 2026) (finding the same in part because "a noncitizen who was previously released on a set of conditions has a strong liberty interest in avoiding re-detention"). Rather, as petitioner has received all the process that he is due the Court finds no due process violation here either.

6

Thus, petitioner's request for habeas corpus relief is **denied** on this ground as well.

### C.   *Fourth Amendment Argument*

Lastly, petitioner claims his arrest "was not supported by probable cause or reasonable suspicion." (Doc. 1, at 15). Rather, petitioner states that he "was arrested simply for being present in St. Paul during an ICE enforcement surge[.]" (*Id.*). In his reply, petitioner again claims that "[i]t is clear [petitioner] was randomly stopped and detained after the fact." (Doc. 13, at 2). Respondents did not address the Fourth Amendment argument.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const., amend. IV. Regarding immigration seizures, an immigration officer may "arrest any alien in the United States, if he has reason to believe (1) that the alien so arrested is in the United States in violation of any such law or regulation and (2) is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). "Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). However, "[p]olice cannot have grounds for suspicion based solely on the race of the suspect." *United States v. Clay*, 640 F.2d 157, 159 (8th Cir. 1981). More specifically, in the context of a traffic stop, an "officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause." *United States v. Brignoni-Price*, 422 U.S. 873, 881–882 (1975) (finding a stop of a vehicle based solely on suspicion that the occupants were of Mexican descent unconstitutional); *see also Trump v. Illinois*, 146 S.Ct. 432, 436 n.4 (2025) (Kavanaugh, J., concurring) ("The Fourth Amendment

7

requires that immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, [and] arrests must be based on probable cause[.]").

Here, to begin, even if petitioner was stopped without probable cause in Minnesota, any constitutional violation involved in his initial seizure and before transfer to this district is not subject to challenge in this Court. All the cases petitioner cites in his reply where federal courts have addressed the legality of the initial stop involved arrests in the district where officers arrested the petitioner. (Doc. 13, at 2). Here, the alleged unlawful stop occurred in a different federal district. In *Pettibone v. Nichols*, 203 U.S. 192 (1906), the Supreme Court rejected the idea that irregularities in the transfer from one jurisdiction to another could support a collateral attack on the proceedings in the transferee jurisdiction. *See cf. Nettles v. Newaygo Cnty. Jail*, Case No. 1:21-cv-997, 2021 WL 5772315, at *5-6 (W.D. Mich. Dec. 6, 2021) (rejecting a habeas claim premised on an allegation petitioner was wrongfully denied a pre-transfer hearing in another district before being transferred to the Western District of Michigan). Petitioner had an opportunity to challenge the lawfulness of his arrest in Minnesota by filling for habeas relief in that district and failed to do so. He cannot now challenge in this district an alleged constitutional violation occurring in another district.

Regardless, petitioner has failed to provide any factual basis from which this Court, or any court, could evaluate the lawfulness of the arrest. Here, neither party has submitted documentation one way or another as to the nature of the arrest and whether the ICE officer that encountered petitioner had or lacked probable cause or reasonable suspicion. Petitioner cites to a Minnesota district court case as support for his claim, but he was not a plaintiff in that case and no factual findings were made as to him, specifically. *Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), 2026 WL 657936 (D. Minn. Mar. 9, 2026) (covering plaintiffs Mubashir Hussen, Mahamed Eydarus, and Jonathan Aguilar Garcia); *see also id.* at *33 (listing the "twenty-three individuals without

8

reasonable suspicion of immigration law violations" but not petitioner). Likewise, the Court in *Hussen* referred to the declarations, videos, and still images that those plaintiffs produced as support for their claims. *See, e.g.*, *id.*, at \*3. Given that petitioner bears the burden here, the Court finds that the lack of documentation is also fatal to petitioner's final claim. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) ("Petitioner bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, he must satisfy his burden of proof by a preponderance of the evidence." (cleaned up)).

Petitioner's request for habeas corpus relief is also **denied** on this ground.

### IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **denied**. This matter is **dismissed**. Judgment shall enter in favor of respondents. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 10th day of April, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

9